213 So.2d 263 (1968)
UNITED BONDING INSURANCE COMPANY, a Corporation, Appellant,
v.
M.D. MOODY & SONS, INC., a Corporation, Appellee.
No. J-223.
District Court of Appeal of Florida. First District.
August 15, 1968.
Rehearing Denied September 5, 1968.
Moore & Moore, Miami, for appellant.
Fischette, Parrish, Owen & Hastings, Jacksonville, for appellee.
RAWLS, Judge.
United Bonding Insurance Company has appealed from a summary final judgment awarding M.D. Moody & Sons, Inc., judgment in the sum of $19,340.74 which, in addition to court costs, represents a claim for rental of certain road-building equipment and repairs thereto.
The sole question on this appeal is whether the cost of rental and repair of road-building equipment is covered by the performance bond issued by the Appellant. This is a case of first impression in Florida.
Ernest C. Odum & Sons, Inc., was a subcontractor on a road construction project on State Road 50. Pursuant to the terms of the subcontract it was required and did give to the contractor a performance bond issued by the Appellant as surety. This performance bond, issued October 16, 1965, named the subcontractor as principal, the prime contractor as obligee, and agreed to save the obligee harmless for any cost it may suffer by reason of the principal's failure to perform as contracted, and to "pay all persons who have contracts directly with the Principal [subcontractor] for labor or materials."
The Plaintiff-Appellee, Moody & Sons, entered into an agreement with the principal to rent equipment such as a roto mixer, front end loader, crawler tractor and self-propelled rollers which were used in the performance of the subcontractor's work on the project. In due course the work was completed, but when the subcontractor did not pay Moody & Sons, Moody instituted this suit against the subcontractor and its *264 surety to collect the amount due and owing.
United Bonding Insurance Company takes the position that since this bond named the prime contractor as obligee, it was neither a public works bond under Section 255.05, Florida Statutes, F.S.A., nor a private bond under Section 84.231, Florida Statutes, F.S.A. Appellant further contends that since the terms of the bond assures payment only to persons who have contracts with the principal for labor and materials, rental of equipment is not encompassed within the terms of the bond because it is neither "labor" nor "materials." We disagree.
As early as 1917, the United States Supreme Court[1] was confronted with this same question. There both the statute and the terms of the bond included the same obligation, namely: "promptly make payments to all persons supplying him or them with labor and materials in the prosecution of the work." The Surety Company contended that the rental of cars, track, and equipment used in the project plus the expense of loading the plant and freight thereon to and from the station was not a supplying of "labor and materials." The Supreme Court rejected that contention and held that the equipment was used in the prosecution of the work and so "material" was thus supplied for the job. It further held that the expense of loading and freight was properly included with the rentals, and all was recoverable under the bond.
Machinery is an essential, if not predominant factor, of a contractor's capability of building roads today. A surety is chargeable with notice as to whether its contractor possesses the capability of performing what it assures will be done. One who rents to the principal the essential equipment to accomplish the contract, furnishes "labor and materials" for the prosecution of the work. The fair rental value of equipment so furnished is as much incorporated in the job as the sweat of a laborer's brow or the concrete from a supplier's mixer.
There are three statutes which shed some light on the question involved. Section 627.0905, Florida Statutes, F.S.A., provides that if a surety bond for either public or private construction be a combination bond containing both performance and payment provisions, it shall be in an amount not less than the total or estimated contract price. Section 84.231, Florida Statutes 1965, F.S.A., governing contractors' bonds under the Mechanics' Lien Law, provides that the bond be conditional for making payments to all persons supplying "labor, material and supplies used directly or indirectly by said contractor, subcontractor or sub-subcontractor in the prosecution of the work * * *" Section 255.05, Florida Statutes, F.S.A., governing public works bonds, is identical to the above except it does not contain the words "or sub-subcontractor." Thus, both statutes recognize the liberal purpose of such bonds to include assurance of payment to all who furnish materials or supplies used directly or indirectly by a subcontractor.
Appellant contends that the controlling case is American Fire and Casualty Company v. Charles Sales Corp.[2] There the subcontractor on a public project was required and did give a bond to the contractor. This bond provided that the subcontractor would perform the work free and clear of all liens for labor and materials and that the surety would save the obligee harmless from all loss, cost or damage he may suffer by reason of failure to do so. The Fourth District Court of Appeal held that Section 255.05 was wholly irrelevant, and Section 627.0905 does not have the effect of making the bond for the use and benefit of persons who are not entitled to a lien under Chapter 84 as in effect prior to October 1, 1963.
*265 In rendering its decision in the above case the Fourth District applied the holding of the Second District Court in American Fire & Casualty Co. v. Martin Marietta Corp.[3] There a supplier of materials to a sub-subcontractor on a private construction job sought to recover under the prime contractor's bond. The bond was conditioned upon payment of all indebtedness incurred by the contractor and to keep the premises free of mechanics' and materialmen's liens. This bond was executed before October 1, 1963, the effective date of a comprehensive revision of the Mechanics' Lien Law. Prior to this revision there was no law controlling the content of a performance bond for private construction. Thus, the holding of that case was that since there was no statute designating the required content of the bond, and since its terms were expressly limited to payment for indebtedness incurred only by the contractor and for payment of mechanics' and materialmen's liens, a material supplier who had no lien and who had not supplied materials directly to the contractor did not come within the plain terms of the bond.
Although the opinion by the Fourth District does not specifically so state, the bond there apparently was also executed before October 1, 1963. Furthermore, that bond was also conditioned to pay any liens arising from the construction contract.
Such are not the terms and conditions of the bond in the instant case. This bond was executed on October 15, 1965, subsequent to the effective date of changes in the Mechanics' Lien Law, and this bond was not specifically conditioned to pay only liens. Therefore, we hold that the above two cases are not controlling.
The Appellee argues that the construction job to be performed was a public road, that presumably the contractor furnished a public works bond under Section 255.05, that rentals of equipment are covered under such bonds, that the bond furnished by the subcontractor was designed to relieve the contractor and his surety of any and all claims arising against the subcontractor, so this bond was required to follow the terms of a public works bond. Having carefully reviewed the bond and the record we find it unnecessary to decide this point.
Affirmed.
WIGGINTON, C.J., and SPECTOR, J., concur.
NOTES
[1] Illinois Surety Company v. John Davis Company, 244 U.S. 376, 37 S.Ct. 614, 61 L.Ed. 1206 (1917).
[2] American Fire & Casualty Co. v. Charles Sales Corp. of Orlando, 203 So.2d 670 (Fla.App.4th, 1967).
[3] American Fire & Casualty Co. v. Martin Marietta Corp., 171 So.2d 435 (Fla.App.2d 1965).